Filed 3/9/16  P. v. Ramirez CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>MAXIMILIANO RAMIREZ,<br><br>     Defendant and Appellant. | A141644<br><br>(Solano County<br>Super. Ct. Nos. Nos. FCR295989<br>FCR296539) |

Maximiliano Ramirez appeals from a judgment of conviction and sentence imposed after a jury found him guilty of resisting, obstructing, or delaying a peace officer (Pen. Code, § 148, subd. (a)(1)) and other charges.[1]  Ramirez contends (1) he was denied effective appellate review because the reporter's transcript for a portion of the trial is unavailable; (2) his conviction for resisting, obstructing, or delaying a peace officer was not supported by substantial evidence; (3) the prosecutor committed misconduct during closing argument; (4) the verdict is unconstitutionally vague; and (5) the court erred in denying discovery of police personnel records under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).  We will affirm the judgment.

I. FACTS AND PROCEDURAL HISTORY

An amended information charged Ramirez with resisting an executive officer (Pen. Code, § 69; count 1);[2] two counts of battery upon a peace officer (§ 243, subd. (b);

_____

[1]     The caption of Ramirez's notice of appeal includes reference to superior court case Nos. FCR295989 and FCR296539.  Ramirez makes no challenge to No. FCR295989.

[2]     Undesignated statutory references are to the Penal Code.

1

counts 2 and 3); resisting, obstructing or delaying a peace officer (§ 148, subd. (a)(1); count 4); driving while under the influence of alcohol (Veh. Code, § 23152, subd. (a); count 5); and driving while having a blood alcohol content of 0.08 percent or higher (*id.*, § 23152, subd. (b); count 6). The matter proceeded to a jury trial.

A. <u>Testimony of Officer Montgomery</u>

Suisun City Police Officer Lesley Montgomery testified that at 1:00 a.m. on October 13, 2012, she was on duty patrolling the area of Main and Solano Streets in a marked patrol car. Sergeant Jose Martinez was parked nearby in another patrol car.

Officer Montgomery heard tires "screeching" about 50–100 feet away and observed a gray Honda traveling north on Main Street near the intersection of Main and Solano Streets. Sergeant Martinez pursued the car, and Montgomery followed. After Martinez activated the lights of his patrol car to initiate a traffic stop, the gray Honda pulled into a parking lot, pulled "back out of the parking lot," and parked on the side of the road.

Sergeant Martinez removed the driver (Ramirez) and placed him on the back seat of a patrol car. Officer Werdon removed the car's passengers.

Sergeant Martinez told Officer Montgomery that Ramirez might be "under the influence." Montgomery noted that Ramirez had the odor of an alcoholic beverage on his person and exhibited "slurred speech." He denied driving the Honda and did not answer a majority of her questions.

Officer Montgomery conducted the Horizontal Gaze Nystagmus Test on Ramirez and observed "a lack of smooth pur[suit] in both of his eyes" and a "distinctive nystagmus absorption." During the one-leg stance test, Ramirez "lifted his leg up and put it down and said he couldn't perform because he said it was too cold." On the "walk and turn test," Ramirez took three steps and said he did not understand. Montgomery explained the test multiple times, but Ramirez talked over Montgomery and argued about the demonstration. When Ramirez restarted the test, he stepped "off the line" and failed to "touch toe to heel," made an improper turn, and stopped without completing the test.

2

Officer Montgomery thereafter asked Sergeant Martinez to "stand by" with Ramirez while Montgomery spoke to Officer Werdon. Montgomery heard a noise and observed Martinez trying to restrain Ramirez. Montgomery assisted Martinez in handcuffing him.

Officer Montgomery escorted Ramirez to the patrol car; on the way, Ramirez resisted by tensing up his arms. When officers placed him in the back of the patrol car, Ramirez "didn't want to get into the backseat," so the officers had to push him in. After being placed inside the patrol car, Ramirez began to spit "on the bars" located between the front and rear seats inside the car. Montgomery identified, and the court admitted into evidence, a photograph depicting Ramirez's spit inside the patrol car.

The officers attempted to move Ramirez from the passenger's side of the car to the driver's side, so that he would be behind a Plexiglas panel rather than the bars. As they did so, Ramirez spat into Montgomery's face. Other officers brought Ramirez out of the car and placed a spit mask on him. As they put him back into the patrol car, Ramirez tensed up his body.

Ramirez was transported to the jail. A phlebotomist took a forced blood draw while Officer Montgomery and another officer held him down.

B. Testimony of Sergeant Martinez

The appellate record contains the court reporter's transcription of at least part of the direct examination testimony of Sergeant Martinez, as well as a settled statement by the trial court and defense counsel as to the remainder of his testimony.

1. Reported Testimony (Direct Examination)

Sergeant Martinez testified that he heard the sound of screeching tires coming from a gray Honda traveling north on Main Street. He pursued the car in his patrol vehicle and initiated a traffic stop by activating his emergency lights. The car continued for about 200 feet, entered and exited a parking lot, and then pulled over after turning right onto Main Street. Martinez identified Ramirez as the driver.

3

Suspecting Ramirez of driving under the influence, Sergeant Martinez instructed Officer Montgomery to conduct field sobriety tests. After Montgomery concluded her testing, she asked Martinez to watch Ramirez.

Sergeant Martinez told Ramirez to walk over to where Officer Montgomery was talking with Officer Werdon. (The remainder of Martinez's reported testimony addresses the acts underlying count 4, at issue in this appeal.) As Ramirez started to do so, Martinez told him to sit down on the curb, "[t]o have better control of him" and avoid a "[p]hysical confrontation." Ramirez, however, continued walking towards the other officers. Martinez grabbed Ramirez's arm, but Ramirez "pulled away." Martinez again told Ramirez to sit on the curb and again grabbed his arm, and again Ramirez tensed up and pulled away. Montgomery and Werdon came to assist, and the three officers handcuffed Ramirez.

As the officers led Ramirez towards a patrol car, he resisted by tensing his body and pulling away from them. After Ramirez was placed on the back seat of the passenger's side of the car, Sergeant Martinez noticed that Ramirez was spitting inside the car and decided to move him to the driver's side of the car, an area covered by Plexiglas. While Martinez pulled Ramirez to the driver's side, Ramirez again resisted by pulling away.[3]

---

[3]    At this point, the reporter's transcript turns to the direct examination testimony by Samdeep Mahil after the lunch recess. The court reporter contends nothing is missing from the transcript and has submitted a declaration that the "entire proceedings taken on the record" were accurately and completely transcribed. In response to Ramirez's application for a settled statement for purposes of this appeal, however, the trial court issued its "Findings of Fact and Settled Statement on Appeal," which asserts that the reporter's transcript omitted the remainder of Sergeant Martinez's testimony, all of the testimony of Officer Werdon, and the first portion of the direct examination testimony of Mahil before the lunch recess. The settled statement is "based upon the Court's and [defense counsel's] trial notes, and sets forth the best recollection of the Court and trial counsel."

### 2. Settled Statement (Partial Direct and Cross-Examination)

#### a. Remainder of Direct Examination

The trial court's contemporaneous notes recorded the following: "The Defendant pulled away from Sgt. Martinez. Sgt. Martinez removed him from the patrol car and put a spit mask on him. When he tried to get the Defendant back into the patrol car, the Defendant kicked him twice, the first time on his upper leg; the second time on his hip. The kicks stung."

#### b. Cross-Examination

According to the court's notes: "Sgt. Martinez testified at the preliminary hearing. He was not asked if there were two kicks. He admitted that he did not testify at the preliminary hearing about receiving a kick to the hip. He was in uniform."

According to defense counsel's notes: "Sgt. Martinez placed a spit mask on the Defendant before placing him back into the patrol car. The spit mask did not inhibit the Defendant's ability to see. Sgt. Martinez did not see the Defendant's foot hit him in the leg, but felt pain and assumed that it was caused by a kick from Defendant. Sgt. Martinez did not suffer any injuries. He did not have a bruise, and there was no swelling. He continued with his shift and did not require any medical attention."

### C. Testimony of Officer Werdon

#### 1. Settled Statement of Direct Examination

The court's notes state: "Officer Werdon is a Lodi police officer (6 months). Before that, he served 2-1/2 years with SPD. The uniforms are similar. He responded to the scene of Defendant's traffic stop. He stood by with the passengers and saw part of the confrontation. The Defendant was refusing to comply with Sgt. Martinez's directive to sit down. The Defendant continued to pull away and the officers pulled him to the ground and handcuffed him. The defendant was combative. Officer Werdon helped get the Defendant into the car. He told the Defendant not to spit, but the Defendant spit anyway. They decided to move the Defendant over. Officer Werdon saw the Defendant kick Sgt. Martinez's leg, and saw saliva on Officer Montgomery's face. The Defendant obstructed, and kept saying if he didn't have handcuffs on, it would be different."

5

Defense counsel's notes reflected similar events: "Officer Werdon saw Sgt. Martinez with the Defendant. The Defendant refused to sit down. Sgt. Martinez grabbed the Defendant's sweatshirt. The Defendant pulled away. Officer Werdon walked over to Sgt. Martinez to assist. Officer Werdon grabbed the Defendant's arm and pulled him to the ground. The Defendant was then handcuffed and walked over to the patrol car. The [D]efendant was yelling and cussing while being walked to the patrol car. After placing the Defendant in the car, Officer Werdon saw spit on the glass between the front and back seats. With Sgt. Montgomery, Officer Werdon removed the Defendant from the car to place a spit mask on him. Sgt. Martinez intervened after Officer Montgomery had left. Officer Werdon saw Sgt. Martinez get kicked in the leg and knee while they placed the Defendant back into the patrol car after placing the spit mask on him. The Defendant was still cursing and yelling. The Defendant was combative."

### 2. Settled Statement of Cross-Examination

According to the court's notes: "Officer Werdon does not recall if the incident was recorded. At the County Jail, Officer Werdon noticed that the Defendant's wrist was bleeding slightly. In the fingerprinting room, the Defendant's head hit the sheetrock wall."

According to defense counsel's notes: "Officer Werdon did not see spit on Officer Montgomery's face. Officer Werdon may have been wearing a recording device but he did not have it activated during any portion of the time that the Defendant was resisting the officers."

### D. Testimony of Criminalist Mahil

#### 1. Settled Statement

Based on the court's notes, the settled statement set forth the following in regard to the initial portion of the witness's direct examination testimony: "[Samdeep Mahil] is a criminalist and Forensic Alcohol Supervisor. She worked four years for Solano and four years for Sacramento and has analyzed thousands of blood samples to identify alcohol and its effect on the body, including alcohol distribution. She has qualified as an expert 45 times. In her opinion, impairment of driving from alcohol consumption can

6

occur as low as .05%, and everyone is impaired at .08%. She described how blood alcohol analysis is done, and what a blood kit contains."

Defense counsel's notes reflected the following: "Ms. Mahil is a forensic toxicologist and has been employed by the Solano County District Attorney's Crime Lab for four years. She was previously employed as a toxicologist and has a total of 10 years [of] work experience in the field of forensic toxicology. She received her B.A. in Biology. She has conducted over 1,000 tests on blood samples and has previously qualified as an expert in alcohol intoxication and its effect on the body. She tested Defendant's blood sample using GCMS. The test was conducted in a scientifically approved manner, accepted in the scientific community."

### 2. Reported Testimony

Mahil testified that she analyzed Ramirez's blood sample and found that he had a 0.22 percent blood-alcohol content. She opined that at 0.22 percent, a hypothetical 140-pound male would be impaired for driving a motor vehicle, she would "expect to see some mental and physical impairment" and perhaps vomiting, and the person's judgment and understanding might be affected.

### E. Jury Verdict and Sentence

The jury acquitted Ramirez on count 1 (resisting an executive officer, based on his alleged spitting at Officer Montgomery or kicking Sergeant Martinez), count 2 (battery on a peace officer, based on his alleged spitting at Montgomery), and count 3 (battery on a peace officer, based on his alleged conduct as to Martinez). The jury also acquitted Ramirez on the lesser included offense of resisting, obstructing, or delaying a peace officer on each of those counts; it could not reach a verdict as to the lesser included offense of battery on count 2; and it acquitted him on the lesser included offense of battery on count 3.

As to count 4, the jury found Ramirez guilty of resisting, obstructing, or delaying a peace officer, which the prosecutor had based on Ramirez's acts of pulling away from Sergeant Martinez and spitting inside the patrol vehicle. The jury also found Ramirez

7

guilty of driving while under the influence and while having a blood alcohol content above the lawful limit (counts 5 and 6).

The court suspended imposition of sentence and placed Ramirez on summary court probation for three years.

This appeal followed.

## II.  DISCUSSION

### A.  Effective Appellate Review

Ramirez contends he has been denied his federal constitutional rights to counsel and due process because the reporter's transcript is unavailable for a portion of the trial proceedings and, he claims, the settled statement is inadequate.  (See § 1181, subd. (9).) We disagree.

#### 1.  Law

An appellate record is constitutionally inadequate "only if the complained-of deficiency is prejudicial to the defendant's ability to prosecute his appeal."  (*People v. Alvarez* (1996) 14 Cal.4th 155, 196, fn. 8; see *People v. Howard* (1992) 1 Cal.4th 1132, 1164–1166 (*Howard*) [record satisfies federal due process if it permits adequate, effective appellate review]; *People v. Young* (2005) 34 Cal.4th 1149, 1170 (*Young*) ["[a] criminal defendant is entitled under the Eighth and Fourteenth Amendments [to the federal Constitution] to an appellate record that is adequate to permit meaningful review"].)

The defendant has the burden of demonstrating that omissions in the appellate record render it inadequate to permit meaningful appellate review.  (*Howard, supra,* 1 Cal.4th at pp. 1164–1166.)  "No presumption of prejudice arises from the absence of materials from the appellate record . . . ."  (*People v. Samayoa* (1997) 15 Cal.4th 795, 820.)  To obtain reversal of a conviction due to the unavailability of a reporter's transcript, the defendant must show "the impossibility of securing an adequate substitute for the missing transcript, and the presence of substantial issues showing the necessity for such."  (*People v. Moore* (1988) 201 Cal.App.3d 51, 56 (*Moore*).

A settled statement may provide an adequate substitute for a missing transcript. (See *People v. Bradford* (1997) 15 Cal.4th 1229, 1381–1382 [settled statement suffices

when resolution of the defendant's claims does not depend on verbatim transcript]; *People v. Pinholster* (1992) 1 Cal.4th 865, 921, disapproved on another ground in *People v. Williams* (2010) 49 Cal.4th 405, 459; *People v. Holloway* (1990) 50 Cal.3d 1098, 1116, disapproved on another ground in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1; *Moore, supra*, 201 Cal.App.3d at p. 56.)

### 2. No Prejudice

Ramirez asserts that "[f]ully one-half or more of the trial testimony is missing, along with all the related contemporaneous proceedings, such as questions, objections, evidentiary rulings, colloquy, and commentary by trial counsel and the trial court." He argues: "Not knowing what was said and done, what objections were posed and evidentiary rulings made, or what other error may have occurred that prejudicially affected the jury's verdict, necessarily makes it impossible for appellate counsel to set forth all arguable issues with citation to the appellate record, and therefore makes it impossible for appellate counsel to provide Appellant with effective assistance of counsel on his appeal, and to ensure that Appellant's constitutional right to meaningful appellate review is preserved and protected. [Citation.]"

The court reporter provided a transcript for the entirety of the trial except for the testimony of Officer Werdon and some of the testimony of Sergeant Martinez and criminalist Mahil. We consider the impact of the absence of a transcript of this testimony, in light of the trial court's settled statement, with respect to (1) counsel's ability to develop argument on the issues he raises in his appellate briefs and (2) the possibility that other issues might have been discovered if a reporter's transcript was available for all of the proceedings.

### a. No Prejudice To Arguments Made In Appellate Briefs

Ramirez's primary argument in this appeal is that substantial evidence does not support the guilty finding on count 4 (resisting, obstructing or delaying a peace officer, based on pulling away from Sergeant Martinez and spitting inside the patrol car). As discussed *post*, however, the testimony for which there *is* a reporter's transcript provides substantial evidence to support this verdict. There is no reason to believe that anything

9

occurred during the testimony for which there is not a reporter's transcript—such as the cross-examination of Martinez and the testimony of Officer Werdon—that would have made this substantial evidence unsubstantial. (See *People v. Kraft* (2000) 23 Cal.4th 978, 1053 [substantial evidence is evidence that is reasonable, credible, and of solid value]; *People v. Barnes* (1986) 42 Cal.3d 284, 306 ["[t]o warrant the rejection of the statements given by a witness who has been believed by the [trier of fact], there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions"].)

The settled statement regarding Sergeant Martinez's and Officer Werdon's testimony does not set forth any facts contrary to the transcribed evidence, which indicates that Ramirez tensed his body and pulled away from Sergeant Martinez. To the contrary, the court's notes in the settled statement indicate that, during the unreported portion of the examinations, Martinez testified that Ramirez "pulled away from [him]," and Officer Werdon testified that Ramirez was "refusing to comply with Sgt. Martinez's directive to sit down," "continued to pull away," and, although Martinez told him not to spit, Ramirez "spit anyway." Defense counsel's notes of Officer Werdon's testimony further confirm these events as follows: "Officer Werdon saw Sgt. Martinez with the Defendant. The Defendant *refused to sit down*. Sgt. Martinez grabbed the Defendant's sweatshirt. The Defendant *pulled away*. . . . The [D]efendant was yelling and cussing while being walked to the patrol car. After placing the Defendant in the car, Officer Werdon saw *spit on the glass between the front and back seats*." (Italics added.) Furthermore, while Ramirez argues that the cross-examination of Martinez was important to test Martinez's credibility, credibility determinations generally have no place in *appellate* review: the credibility of witnesses is a matter "exclusively within the province of the trier of fact." (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.)

Moreover, if the cross-examination of Sergeant Martinez or the testimony of Officer Werdon *had* damaged Martinez's credibility or included exculpatory evidence, we would expect to see it mentioned in defense counsel's summation to the jury. Yet there is nothing in the attorneys' closing arguments—which *are* contained in the

10

reporter's transcript—that indicates anything of the sort. To the contrary, defense counsel merely argued that the jury should disbelieve the officers' claims of Ramirez's combativeness, because the video recordings of other aspects of the incident showed that he was calm. (See *Moore, supra*, 201 Cal.App.3d at pp. 57–58 [no reversal even though transcript of closing arguments was mostly missing, since rebuttal argument did not indicate defense counsel had conceded an issue or withdrew a defense during closing].)

In sum, Ramirez has not shown any reasonable possibility that his substantial evidence argument as to count 4 would have benefitted from a full transcript. Nor has he demonstrated how the other arguments in his appellate briefs—regarding the vagueness of the verdict and prosecutorial misconduct during closing argument—might be bolstered if the record contained a transcript of all, rather than part, of the trial testimony.

### b. No Prejudice As To Claims Not Made

Ramirez also fails to show any likelihood that the missing record reflects legal errors *besides* those asserted in Ramirez's appellate briefs. Nothing in the reporter's transcript indicates any possibility of error occurring in the portions for which there is no transcript. Although Ramirez speculates that the prosecutor's comments during closing argument suggests the prosecutor may have acted similarly during other parts of the trial, we conclude *post* that the prosecutor's comments were *not* misconduct. Moreover, nothing in the settled statement, or the closing and rebuttal arguments of counsel, suggests any error arising in the unreported portions of the trial. (See *Young*, *supra*, 34 Cal.4th at p. 1170 [prejudice is not shown by arguing that the missing transcript *may* have contained evidence of reversible error].)

Ramirez contends the settled statement is inadequate because it is incomplete and memories have faded since the trial, in light of the following statement by the trial court: "The trial concluded more than a year ago. Trial counsel have confirmed that their memory of the missing testimony is fragmentary and incomplete due to the passage of time. Deputy District Attorney Jones has confirmed that he has no notes recording the testimony. Deputy Public Defender Taylor retained only brief notes that did not include her cross-examination of the witnesses. . . . [¶] . . . [¶] . . . The trial court made and

11

preserved contemporaneous, handwritten notes during the testimony of the witnesses at issue here . . . [that] are incomplete but otherwise accurate.  The notes do not record all questions posed and all answers given, nor do they record evidentiary objections and rulings."  But the question is not whether the settled statement reflects *everything* that occurred; the question is whether Ramirez has established that the absence of a transcript of portions of the testimony deprives him of effective appellate review despite the facts recorded in the settled statement.  Under the circumstances of this particular case, Ramirez has not done so.

Distinguishable from the matter at hand is *In re Steven B*. (1979) 25 Cal.3d 1.  There, one day of a two-day proceeding was not transcribed, and there was no settled statement with regard to the missing portion of the record:  defense counsel averred that his memory was inadequate for him to participate in the construction of a settled statement, and the prosecutor did not participate either.  (*Id*. at pp. 3–4.)  Here, we *do* have a settled statement.  Ramirez does not cite to any case reversing a judgment under the circumstances before us.

B.  <u>Sufficiency Of The Evidence (Count 4)</u>

As mentioned, count 4 charged Ramirez with resisting, obstructing, or delaying Officer Montgomery and Sergeant Martinez as they discharged their duties (§ 148, subd. (a)(1)).  Ramirez argues there was insufficient evidence to show his "willful resistance to his arrest" or that his actions "were anything but instinctual or accidental."  His arguments are unavailing.

1.  <u>Section 148, Subdivision (a)(1)</u>

"Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed," is guilty of a misdemeanor.  (§ 148, subd. (a)(1).)  The elements of the crime are that " '(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have

known that the other person was a peace officer engaged in the performance of his or her duties.' " (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329.)

In this case, the jury was instructed that the prosecutor alleged that Ramirez resisted, obstructed, or delayed Officer Montgomery or Sergeant Martinez by pulling away from Martinez when Martinez told him to sit on the curb, tensing his body and trying to pull away from Martinez when he was being walked to Montgomery's patrol car, pulling away from Martinez when he was trying to reposition Ramirez in the patrol vehicle, and spitting in the patrol vehicle (other than the alleged spitting at Montgomery, which was the subject of other counts).

### 2. Substantial Evidence

Substantial evidence supports the conclusion that Ramirez resisted Officer Montgomery and Sergeant Martinez as charged in count 4. There is no debate that Montgomery and Martinez were engaged in the performance of their duties and that Ramirez knew or should have known as much. Furthermore, there was ample evidence that, while the officers were engaged in their duties, Ramirez willfully resisted, obstructed, or delayed them. Montgomery testified that she saw Martinez trying to restrain Ramirez. Martinez testified that Ramirez kept walking toward Montgomery when he instructed Ramirez to sit on the curb, and Ramirez tensed his body and pulled away when Martinez grabbed him. Martinez further testified that Ramirez resisted by tensing and pulling his body away from the officers as they led him to the patrol car. Martinez saw Ramirez spit in the patrol car, Montgomery saw him spit in the car, and a photograph of the spit was admitted into evidence. And when Martinez tried to pull Ramirez behind the protective screen on the driver's side of the patrol car, Ramirez continued to pull away from him. From this evidence of Ramirez's repeated efforts to tense his body, pull away, and spit, a trier of fact could reasonably conclude that Ramirez's resistance, obstruction, or delay was willful.

### 3. Ramirez's Arguments

Ramirez nevertheless contends it was not proven that he *willfully* tensed his body, pulled away, flailed his legs, or spat. He urges, rather inconsistently, that his actions

13

were instinctual or *accidental*, because he was calm at other points; he was likely *confused*, given his state of intoxication (pointing to the criminalist's testimony concerning a person with a 0.22 percent blood alcohol level); and he was *provoked* by Sergeant Martinez. But these arguments miss the mark, because they merely assert that the jury should have drawn a different inference from the evidence; our role is not to reweigh the evidence, but to review for evidence from which a jury reasonably *could* find the prosecution proved its case. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

Ramirez further argues that the jury had doubts as to whether the act of spitting was willful, as shown by a question it asked during deliberations: "To find the defendant guilty of [Count Four] spitting, in order to delay, obstruct, or delay[] the process of going to jail, does it have to be <u>willingly</u>? In other words, did he spit in order to not go to jail, or was the process delayed only because the officers had to place a spit cover on his face?" The court responded: "Regarding your question about Count 4: The defendant must have acted willfully. Please see instruction 2656 for the definition of willfully. A willful act must amount to resistance, obstruction or delay to be a violation of Penal Code § 148(a)." This exchange actually confirms that, by the time the jury rendered its verdict, it knew full well that it could not find Ramirez guilty on count 4 unless he resisted, obstructed, or delayed *willfully*. Ramirez fails to demonstrate error.[4]

---

[4]    Ramirez also argues that the jury had doubts as to whether Ramirez's spitting was willful, in light of its acquittal on counts 1 and 2 for allegedly spitting in Officer Montgomery's face. And in explaining the jury's deadlock on the lesser included offense of battery on count 2, a juror stated: "I think, if we—I don't know if we came to a clear understanding of the instructions or what the law was I should say. . . . [¶] . . . [¶] I think we—with the lesser charge on [count 2, the spitting incident with Montgomery] . . . we kept getting hung up on willful, willingly and purposely. . . . [¶] . . . [¶] And I think, the whole argument was, was it on purpose. Could we tell what this person was thinking when they did whatever they did. So it kept going back to willingly, purposely and willfully." But counts 1 and 2 dealt with different acts than count 4: even if the jury had a doubt as to whether Ramirez willfully spit in Montgomery's face, it could conclude he willfully spit inside the patrol car. Furthermore, the jury's verdict on count 4 could have

14

C. Prosecutorial Misconduct

Ramirez contends the prosecutor committed misconduct in closing argument by vouching for witnesses and inflaming the jury. We disagree.

1. Law

A prosecutor's conduct violates the federal Constitution if it is so egregious that it infects the trial with a degree of unfairness that renders the conviction a denial of due process. (*People v. Stanley* (2006) 39 Cal.4th 913, 951 (*Stanley*).) It may otherwise constitute misconduct under California law if it involves deceptive or reprehensible methods to attempt to persuade the court or jury. (*Ibid.*) Nonetheless, a prosecutor may argue vigorously to the jury as long as it amounts to a fair comment on the evidence, such as urging reasonable inferences or deductions to be drawn from the evidence. (*Ibid.*)

2. The Prosecutor's Comments

a. Vouching

A prosecutor engages in misconduct when he vouches for the credibility of witnesses. (*United States v. Young* (1985) 470 U.S. 1, 11; *People v. Perez* (1962) 58 Cal.2d 229, 245.) But a "prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses" are permissible if "based on the 'facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief'. . . ." (*People v. Frye* (1998) 18 Cal.4th 894, 971, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421 & fn. 22.)

Ramirez contends the prosecutor improperly vouched for the evidence with the following comments in rebuttal argument. "[PROSECUTOR]: . . . Three cops took the stand. There's evidence of [Ramirez] driving the vehicle. There's evidence of him under the influence. There's evidence of him spitting. There's a picture of spit on the patrol vehicle. So certainly I can see if these officers lie, they were untruthful, then certainly your verdict is not guilty. *But we know that they didn't lie.* [¶] [DEFENSE COUNSEL]: Objection. Your Honor, improper argument. [¶] THE COURT: Overruled. I think it's

been based not on his spitting inside the patrol car, but on his pulling away from Sergeant Martinez. Ramirez fails to establish error.

15

fair comment in light of the defense closing argument. [¶] [PROSECUTOR]: *We know that they told the truth*. [¶] [DEFENSE COUNSEL]: Objection. [¶] THE COURT: Overruled. [¶] [PROSECUTOR]: It's not like they planned for this to happen. And it's not like when they stopped him, they knew he wasn't under the influence. It's not like they knew when he was going to spit and kick once they arrested him. So the entire defense is you can't trust the officers. And again, we have the evidence. We have the evidence on camera. Under the influence. And we also have the evidence of him being argumentative on camera."

The trial court did not err in overruling defense counsel's objections, and the prosecutor did not improperly vouch for the credibility of the officers. During the defense closing argument, Ramirez's counsel had urged that the officers were not telling the truth because video of the incident showed that Ramirez was calm. The prosecutor essentially rebutted this claim by arguing that "we know [the officers] didn't lie" but were telling "the truth," because "[t]here's a picture of spit in the patrol vehicle" that has been admitted into evidence and "[w]e have the evidence on camera," as shown to the jury. In context, the use of the word "we" was not a reference to any secret knowledge of the prosecutor or the district attorney's office, but the collective "we"—as in "you jurors and I"—and the prosecutor merely urged that the officers were patently truthful because their testimony was supported by independent evidence the jury could evaluate for itself. The prosecutor therefore commented fairly on the evidence before the jury.[5] Furthermore, the jury was instructed that what the attorneys say is not evidence, and the record discloses no possibility that the jury was improperly misled. (See CALCRIM No. 222.)

Ramirez also points us to the following comment by the prosecutor: "[Y]ou only have to agree that he committed only one of these acts [to convict on count 4]; but again *we know that he committed all four acts*." (Italics added.) But defense counsel did not

---

[5] The court also overruled the prosecutor's objection to *defense* counsel's argument that "there's not one camera that picked up Mr. Ramirez acting as a crazy man that these officers alleged," concluding it too was a "fair comment [on] the evidence."

object to this statement, and the failure to timely object and request an admonition forfeits any challenge on appeal. (*Stanley, supra*, 39 Cal.4th at pp. 951–952; *People v. Gamache* (2010) 48 Cal.4th 347, 371.) In any event, this statement was not misconduct, for the reasons stated *ante*.

### b. Inflaming

If a prosecutor tries to inflame the passions of the jury against a defendant, or cites to facts not in evidence, he is guilty of misconduct if his conduct deprived the defendant of a fair trial. (See *People v. Hill* (1998) 17 Cal.4th 800, 825; *id.* at p. 830.)

Ramirez contends the prosecutor inflamed the jury and urged conviction based on his youth and character traits rather than his conduct. He points to the following comment: "[PROSECUTOR]: And [after the field sobriety tests, Ramirez] throws his temper tantrum as a two-year-old child, gets arrested and gets in the car and starts to spit. And then he has the audacity to spit at a cop in her eye—spit in Officer Montgomery's eye. Personally, I don't know how Officer Montgomery didn't loose [*sic*] it. I think most of us would loose [*sic*] our religion, if you know what I mean. If someone spat in the eye. [¶] [DEFENSE COUNSEL]: Objection, Your Honor. Improper argument. [¶] THE COURT: Overruled. I think, it's one of the fair comment exception. [¶] [PROSECUTOR]: But she kept her cool, got out of the car and told the other officers what happened. And then he gets put out of the car and he kicks Sergeant Martinez twice. He does all of this because he doesn't want to go to jail. He doesn't have his way. And so he acts like a two-year-old child, throws a temper tantrum, gets physical, gets violent and resists the arrest."

The trial court did not err in concluding this was a fair comment on the evidence. Moreover, we see no reasonable possibility that, merely because the prosecutor likened Ramirez's behavior to that of a toddler and emphasized the indignity of being spit in the eye, the jury would have convicted Ramirez without regard to whether the prosecutor established the elements of the crime beyond a reasonable doubt. Indeed, we need look no further than the jury's verdict in this case, which *acquitted* Ramirez on the counts predicated on his spitting in Officer Montgomery's eye.

17

As further instances of inflaming the jury, Ramirez points to the following comments to which defense counsel made no contemporaneous objection. "He acted like a little spoiled brat because he was going to jail . . . . He knows that he's had way too much to drink. In fact, he knows that he's not supposed to be drinking anyway. He's under 21. [¶] . . . [The field sobriety test] is when his arrogance and cockiness comes out. . . . And this is his juvenile—his arrogance coming out. He's pretty much telling the officer how to instruct to do the test." "He's very cocky and arrogant. . . . We saw on the video what he was doing, what kind of guy he was." Because no contemporaneous objection and request for admonition was made to these comments, any challenge has been forfeited. In any event, the comments do not demonstrate prosecutorial misconduct.

Ramirez nonetheless contends it is "highly probable" that the prosecutor's "assault on [Ramirez's] character, and personal assurances of the officers' truthfulness, unfairly tipped the balance" against Ramirez on count 4, because the jury found the evidence of willfulness to be so weak that they acquitted him of counts 1–3. The argument is meritless. Counts 1–3 were based on different acts than count 4. Moreover, Ramirez does not explain why the prosecutor's characterization in closing argument would have swayed the jury to convict Ramirez on count 4 but not on counts 1–3. If anything, the fact that the jury acquitted Ramirez on counts 1–3 indicates that the prosecutor's characterization of Ramirez was *not* prejudicial.

D. Count 4 Verdict

Ramirez argues that the verdict as to count 4 must be reversed because it is unconstitutionally vague. He fails to establish error.

Because the prosecution limited its proof on count 4 to four specific actions and two separate officer-victims, due process required the trial court to instruct the jury that it must be unanimous as to which one (or more) of the four actions violated the statute. (See *People v. Robbins* (1989) 209 Cal.App.3d 261, 264; *People v. McPeters* (1992) 2 Cal.4th 1148, 1184; *People v. Briscoe* (2001) 92 Cal.App.4th 568, 591–592.) In this regard, the court instructed: "You may not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of the alleged acts

18

of resisting, obstructing, or delaying a peace officer who was lawfully performing his or her duties, and you *all agree on which act he committed*." (Italics added.) Ramirez concedes the court instructed the jury properly.

Ramirez argues, however, that the general verdict form does not *confirm* that the jury agreed on which act(s) Ramirez committed, and because there is insufficient evidence that all of the four alleged acts were done willfully to resist, obstruct, or delay, the verdict must be reversed as unconstitutionally vague.

Ramirez is incorrect. As set forth *ante*, there was sufficient evidence as to each of the acts underlying count 4. Moreover, we presume that the jury understood and followed the court's instruction, and nothing in the record suggests anything to the contrary. (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 598–599.)

In addition, Ramirez briefly suggests that the jury may have imputed a criminal state of mind to Ramirez due to the evidence that Ramirez remained silent in response to some of Officer Montgomery's questions. He urges that the verdict must be set aside if it was based in material part on that evidence, because it effectively punished him for exercising his First Amendment right of free speech. (Citing *Norwell v. City of Cincinnati* (1973) 414 U.S. 14.) His argument is meritless. There is no indication that the jury convicted Ramirez for remaining silent. And *Norwell*, on which Ramirez relies, is plainly distinguishable. *Norwell* held that a conviction for disorderly conduct deprived the defendant of his right to free speech because it was based only on his nonprovocative verbal protest of the officer's behavior. (*Id*. at p. 16.) Here, the jury was instructed that count 4 was based on four acts, not a nonprovocative verbal protest.

E. Personnel Records

Ramirez contends the trial court erred in denying his request for discovery of the personnel records of Officer Montgomery and Sergeant Martinez pursuant to *Pitchess, supra*, 11 Cal.3d 531. He "asks this court to review the sealed transcript of the trial court's *in camera* hearing" on his motion, to determine if the court abused it discretion by not requiring production of information relevant to the charges. Respondent has no objection to our conducting the review requested by Ramirez.

19

1. <u>Law</u>

A criminal defendant has a limited right to discovery of police personnel records. (*Pitchess, supra,* 11 Cal.3d at pp. 537–538; Evid. Code, §§ 1043–1047; Pen. Code, §§ 832.5, 832.7, 832.8.) "The procedure requires a showing of good cause for the discovery, an in camera review of the records if good cause is shown, and disclosure of information 'relevant to the subject matter involved in the pending litigation.' " (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1316.) "Good cause for discovery exists when the defendant shows both ' "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' " (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1016.)

When good cause has been shown, the custodian of personnel records is obligated to bring "all 'potentially relevant' " materials to the court and state what other documents in the personnel file were not brought and why. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228–1229.) The trial court reviews the potentially relevant materials in camera in the presence of a court reporter, determines what must be produced, and makes an adequate record of the materials it considered. (*Ibid*.) We review the court's *Pitchess* ruling for abuse of discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.)

2. <u>Analysis</u>

Here, the trial court granted Ramirez's motion for an in camera hearing. It then held that hearing, which was reported, transcribed under separate cover, and filed under seal. After the in camera hearing, the court denied discovery, stating that the court "has reviewed in camera the records of . . . Officers Martinez and Montgomery and finds that there's no information in those records for the past five years that would require disclosure to the defense."

Having reviewed the sealed transcript of the in camera hearing as requested by Ramirez, we conclude that the trial court did not commit reversible error in determining there were no items in the personnel file that should have been disclosed to the defense.

III. <u>DISPOSITION</u>

The judgment is affirmed.

_____

NEEDHAM, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.

(A141644)

21